[No. 13388.   Department Two.   June 20, 1916.]

LOUISE F. STERTZ et al., Appellants, v. INDUSTRIAL
INSURANCE COMMISSION, Respondent.[1]

MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — CONSTRUCTION. The injury for which a workman is entitled to recover under the workmen's compensation act (3 Rem. & Bal. Code, § 6604-3), is one resulting from some fortuitous event, not necessarily accidental, which under 3 Id., § 6604-5, may have occurred away from the plant of the employer, if the workman were at the time in the course of his employment.

SAME. Under provisions of the workmen's compensation act excluding from compensation only wilfully incurred injuries, and those arising from diseases, and defining "injury" as used in the act as referring "only to an injury resulting from some fortuitous event," the right of compensation is not confined to injuries arising out of the employment nor to those of an accidental nature.

SAME. The workmen's compensation act of this state (3 Rem. & Bal. Code, § 6604-1 et seq.) is neither an employer's liability, nor an ordinary compensation act, but an industrial insurance statute, under which the remedy for rejected claims is against a fund in the hands of a state commission and not against the employer.

SAME. The workmen's compensation act (3 Rem. & Bal. Code, § 6604-1 et seq.) ends the jurisdiction of the court as to all phases of the master's liability to his servant for injuries resulting from fortuitous events, regardless of fault on the part of either, and remits the determination thereof to the industrial insurance commission.

CONSTITUTIONAL LAW — DUE PROCESS — WORKMEN'S COMPENSATION ACT. The due process clause of the Federal constitution is not violated by an act adding liability to the employer to his employee through the act of a stranger on the premises, nor by the provision of the act making the employer an insurer of the employee while at the employer's plant.

MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — INJURIES AWAY FROM PLANT. Under the workmen's compensation act (3 Rem. & Bal. Code, § 6604-1 et seq.) giving an employee or in case of death his dependents a right to compensation against the industrial insurance fund, if injured "upon the premises or at the plant, or, he being in the course of his employment, away from the plant of his employer," an employee of a logging company killed by a shot from a

[1]Reported in 158 Pac. 256.

third person, while in charge of the company's logging train, is entitled to compensation from such fund without the necessity of electing to sue the stranger or to take under the compensation statute.

SAME—WORKMEN'S COMPENSATION ACT—CONSTRUCTION. The fact that the workmen's compensation act applies to "hazardous" and "extra hazardous" occupations does not restrict compensation merely to injuries arising out of the work, in the face of the express statutory provision including injuries from "fortuitous events" whether upon the premises or in the course of employment away from the plant.

SAME. The employment of the word "accident" is a substitute for "fortuitous event" in the administrative details of the workmen's compensation act and cannot be construed as limiting the right of compensation to only accidental injuries when viewed in the light of the positive definitions of the statute.

SAME. The provision of the workmen's compensation act requiring the employer to report all accidents and state whether they "arose out of or in the course of the injured person's employment," does not restrict compensation to accidental injuries, since such reports are not made a basis of compensation.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered September 24, 1915, in favor of the defendant, in an action for death under the workmen's compensation act, tried to the court. Reversed.

*T. P. Fisk*, for appellants.

*The Attorney General* and *John M. Wilson, Assistant (Chas. E. Arney, Jr.,* of counsel), for respondent.

BAUSMAN, J.—This is a proceeding by the widow and minor children of Stertz, foreman of a logging camp, to recover through the industrial insurance commission statutory compensation for death.

This foreman had suspended for misconduct a workman named Steel but had reinstated him. Steel, discharged a few days later by the president, waylaid the logging train and, wounding one, killed others of the workmen including Stertz, who was in charge of the train as foreman. Only those were assailed with whom Steel while a workman had

had quarrels concerning his tasks.   The present claimants are not shown to have collected or sought damages from Steel, but their claims were rejected both by the commission and the superior court.   The sole argument now made to sustain their rulings is that the statute contemplates only "accident" as that term is popularly understood and also as "arising out of" the employment.   These words nowhere occur in any of the definitions or granting clauses of our statute.   Far stronger terms occur.

We are now brought to a point where we must explore this noble legislation to obtain a general, decisive view.

Our legislators, with three systems to imitate, chose the most sweeping.   There was that of England, which least interferes with employers, a liability act removing defenses but prescribing no way in which the employer must provide for the claim.   There was that of Denmark and Sweden in which the state issues policies to the employed at the master's expense.   Finally there was that of Germany which ours most nearly resembles and which provides both the remedies and the fund by compulsory insurance with contribution of employers collectively.   Even the German scheme was somewhat exceeded, for the private parties under our law have no participation in the management, nor, during a first period of three months, does our workman contribute something toward the loss, as he did under the German.

Our act came of a great compromise between employers and employed.   Both had suffered under the old system, the employers by heavy judgments of which half was opposing lawyers' booty, the workmen through the old defenses or exhaustion in wasteful litigation.   Both wanted peace.   The master in exchange for limited liability was willing to pay on some claims in future where in the past there had been no liability at all.   The servant was willing not only to give up trial by jury but to accept far less than he had often won in court, provided he was sure to get the small sum without having to fight for it.   All agreed that the blood of the

workman was a cost of production, that the industry should bear the charge.

By the working class the new legislation was craved from a horror of lawyers and judicial trials. What they wanted, as this act expressly recites in its first section, was compensation not only safe but *sure*. To win only after litigation, to collect only after the employment of lawyers, to receive the sum only after months or years of delay, was to the comparatively indigent claimant little better than to get nothing. The workmen wanted a system entirely new. It is but fair to admit that they had become impatient with the courts of law. They knew, and both economists and progressive jurists were pointing out, what is now generally conceded, that two generations ought never to have suffered from the baleful judgments of Abinger and Shaw.

It is for us to say not whether our workmen ought to have a statute which insures them absolutely on the master's premises but whether they do have it. What they gave up for it is great, trial by jury and unlimited damages. The former was an undeniable advantage, the latter had often brought them five-fold what is afforded by this act, which gives not to exceed four thousand dollars for a life and fifteen hundred for the loss of a limb or an eye. What laborers desired was not mere removal of the old defenses. Moreover, the English statute that had removed these had already begotten whole volumes of contests over the new words "accident" and "arising out of employment." Well may ours have used unqualified words to create an undebatable recovery when the injury should occur at the place of work, which even the common law had required the master to maintain in safety.

Those who drafted our law had before them many foreign statutes during the long and careful preparation of this, so we are at once struck by the absence of many familiar terms. In some of those the right of action springs from "accident;" in others from an injury arising "during and in the course

of employment." The English statute is "personal injury by accident arising out of and in the course of employment." Simple as these terms appear, they have filled volumes with discussion. Not one of them appears in any of the enabling or granting provisions of our law. Wherever a right is conferred or definition given, ours is unqualified. Indeed, our statute is in these features the least qualified that can be found. The intention to get rid of judicial controversies apparent throughout, we have already recognized:

"Aside from its humane purpose, it was adopted in order that the delay and frequent injustice incident to civil trials might be avoided." Chadwick, J., in *State v. Mountain Timber Co.*, 75 Wash. 581, 583, 135 Pac. 645.

Having seen what was not inserted, let us see what was. Let us examine definitions carefully made. The first section, after stating that industrial relations in all hazardous employments are matter for police regulation, that injuries are frequent and inevitable and that controversies about them are wasteful, declares that:

"*All phases* of the premises are withdrawn from private controversy, and *sure and certain relief* for workmen, injured in extrahazardous work, and their families and dependents is hereby provided *regardless of questions of fault* and *to the exclusion* of *every other* remedy, proceeding or *compensation*, except as otherwise provided in this act; and to that end all civil actions and civil causes of action for such personal injuries and *all jurisdiction of the courts of the state* over such causes are hereby abolished, except as in this act provided." Laws 1911, p. 345, § 1; 3 Rem. & Bal. Code, § 6604-1.

The third section, that of definitions, defines workman:

"Workman means every person in this state, who, after September 30, 1911, is engaged in the employment of an employer carrying on or conducting any of the industries scheduled or classified in section 4, whether by way of manual labor or otherwise, and whether upon the premises or at the plant or, he being in the course of his employment, away from the plant of his employer." Id., § 6604-3.

We shall quote later a proviso appended to this definition and relating to injuries from third persons.

Dependent was defined as certain "relatives of a workman whose death results from any injury and who leaves surviving," etc.

The fifth section, the granting clause of compensation, is as follows:

"Each workman who shall be *injured* whether *upon the premises* or at the plant, or, he being in the course of his employment, away from the plant of his employer, or his family or dependents in case of death of the workman, *shall receive* out of the accident fund compensation in accordance with the following schedule, and, except as in this act otherwise provided, such payment *shall be in lieu* of any and all rights of action whatsoever against any person whomsoever." Id., § 6604-5.

Obviously and clearly the qualifying "in the course of employment" does not apply to "on the premises." Had that been intended, the arrangement was natural and easy. Thus, "When the workman is injured in the course of his employment either upon the premises or away from the plant." Surely we must assume a reason for the other peculiar order. Nor did that order come of chance. It is precisely repeated, we have just seen, in the definition of "workman." Even the punctuation is most carefully repeated there.

Injury too was given a definition: "The words injury or injured, as used in this act, refer only to an injury resulting from some *fortuitous event* as distinguished from the contraction of disease."

In this last we notice, first, not merely the avoidance of "accident" but of "arising out of the employment," the use of which this definition fairly invited if that were to be meant. Second, exclusion by enumeration. Disease is excluded; everything else is included. Lastly, "*fortuitous event*," the strongest term that could be used, no popular expression but one used by lawyers for positive strength, a term in truth

that is selected when one wishes all of "accident" and more. Black thus defines it:

"There is a difference between a fortuitous event, or inevitable accident, and irresistible force. By the former, commonly called the 'act of God,' is meant any accident produced by physical causes which are irresistible; such as a loss by lightning or storms, by the perils of the seas, by inundations and earthquakes, or by sudden death or illness. By the latter is meant such an interposition of human agency as is, from its nature and power, absolutely uncontrollable."

Only one other kind of claim is excluded, that based on intentionally or wilfully incurred injuries. These the act itself elsewhere mentions and excludes without other language of consequence here.

We have now the provisions upon which compensation has to be granted or denied. The universally employed terms by which the injury must spring from the business are not there. Very opposite phraseology is used. The supreme court of the United States, in *Holden v. Stratton*, 198 U. S. 202, had occasion to consider the statute of this state which exempts the proceeds of life insurance policies from creditors. That our statute was using extreme, almost unreasonable, language being pointed out, it was argued to the court that the words must therefore be given more moderate meaning and must be interpreted in the policy of milder statutes of other states, but the supreme court said:

"The wide departure from the legislation of many of the other states, shown by the unrestricted terms of the Washington statute, instead of manifesting the intention of the legislature of that state to narrow the exemption to conform to the statutes of other states, on the contrary conclusively shows the intention of the Washington legislature to adopt a broader and more comprehensive exemption."

To resume, ours is not an employer's liability act. It is not even an ordinary compensation act. It is an industrial insurance statute. Its administrative body is entitled the industrial insurance commission. All the features of an in-

surance act are present. Not only are all remedies between master and servant abolished, and, in the words of the statute, all phases of them withdrawn from private controversy, but the employee is no longer to look to the master even for the scheduled and mandatory compensation. He must look only to a fund fed by various employers. When the employer, for his part, pays his share into this fund, all obligation on his part to anybody is ended. Let a claim be rejected by the commission, the latter and not the employer is to be sued. Nor is the commission so much as selected by the parties. The state administers the fund. Few foreign countries had yet adopted a scheme so comprehensive. Germany alone furnished a precedent. In subsequent legislation in this country only one or two states have adopted this principle and none have pushed it so far.

To sum up, our act positively ends the "jurisdiction of the courts," on "all phases" of master and servant liability. Now it is undeniable that liability for a stranger's acts *on the premises* is one of those phases, undeniable that in nearly every such case a question immediately arises whether it is not the master who may have to respond. But, it is said, we cannot hold such liability indisputable under this statute without establishing a construction that would make the master liable for such extreme things as death by lightning. Let us, therefore, review the statute again with both kinds of accident in view.

We have seen that, as the first section put an end to all civil actions appertaining to master and servant liability, so the fifth declared that the compensation "shall be in lieu of any and all rights of action whatsoever *against any person whomsoever.*"

Next, we have seen in the first section that compensation is to be paid *regardless of fault.* Thus there was to be compensation for some injuries not actionable before. For instance, let a machine which was excellently made, excellently inspected, and excellently operated cause injury by capri-

cious action contrary to all human experience, in a word let nobody be to blame, a servant under the common law could not recover for the master had not been at fault. Yet that this act means to give compensation in just such a situation can never be questioned. We start accordingly with liabilities before unknown, "a sure and certain relief for workmen regardless of questions of fault."

From the outset the creating of new liabilities was conceded. In the first debate in this court over the act an opening challenge was the new liability without fault taking away the employer's due process of law, and an illustration was given which it was thought would make the law ridiculous. Let the workman while at work be injured by a stranger's throwing something in from the street, there would be a claim for recovery; he would be injured "on the premises;" the injury would be from "fortuitous event." That such a claim would seemingly come under the act was referred to but left undecided by Justice Fullerton in his exhaustive opinion (*State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466). He held under indisputable precedents that, notwithstanding the due process guaranty, courts had already sustained statutes imposing degrees of liability regardless of fault, and these decisions sustained ours in most of the new liabilities. As to others, if these were improper, the act by its own terms could stand without them. The apparent scope of the statute he conceded:

"It is claimed that the act allows workmen employed in such industries the benefit of the act when injured outside of the line of their duties or when engaged in the business of the concern in a capacity not affected by the peculiar hazards of the business. We have quoted enough of the statute to show that it is somewhat obscure in these respects, but we are not inclined to think the point fatal to the act, even though we concede counsel's interpretation of it to be the correct one." Id., pp. 196, 197.

It is curious that the very illustration flung at our act to make it ridiculous has not been held ridiculous even under the narrow English statute. In *Challis v. London & South-Western R. Co.*, 2 K. B. (1905) 154, it was held that the employer was liable for the death of a locomotive engineer injured by a stone thrown from a bridge above by a mischievous boy.

Nor can we see that under the constitutional objection of due process of law the complaint of the employer is sounder when he pays for injuries caused by the meddling of a stranger on the premises than when he pays for injuries from a perfect machine. The question is one of degree and often of small degree. For, that the master should have every possible inducement to shield his workmen at their tasks from the meddling of third persons is plain, and instances are simple where his failing so to protect them must make him liable at common law. Having pronounced constitutional, then, an act which compels both employers and employed to go into a scheme of insurance, we do not hesitate to say that the difference in new or added liability by the act of a stranger on the premises is not enough to make it unconstitutional. It is but a slight extension of the common law assurance of a safe place to work. Neither would it be a violation of the due process guaranty to make the master an insurer of the workman at the shop. The supreme court of the United States in upholding the Nebraska statute making railways insurers of passengers (*Chicago, R. I. & Pac. R. Co. v. Zernecke*, 183 U. S. 583), said:

"Our jurisprudence affords examples of legal liability without fault, and the deprivation of property without fault being attributed to its owner."

Turning back now to the definition of workman, we may read that again with its immediate proviso:

"Workman means every person in this state, who, after September 30, 1911, is engaged in the employment of an employer carrying on or conducting any of the industries

scheduled or classified in section 4, whether by way of manual labor or otherwise, and whether upon the premises or at the plant or, he being in the course of his employment, away from the plant of his employer: *Provided, however,* That if the *injury* to a workman *occurring away from the plant* of his employer is due to the negligence or wrong of another not in the same employ, the injured workman, or if death result from the injury, his widow, children or dependents, as the case may be, *shall elect* whether to take under this act or seek a remedy against such other, such election to be in advance of any suit under this section; and if he take under this act, the cause of action against such other shall be assigned to the state for the benefit of the accident fund; if the other choice is made, the accident fund shall contribute only the deficiency, if any, between the amount of recovery against such third person actually collected, and the compensation provided or estimated by this act for such case." Id., § 6604-3.

With the whole section before us we perceive that, when a workman is injured off the premises by a stranger, he must elect whom he shall sue, and that no electing is imposed on him when he is injured by a third person upon the premises. Of the latter situation nothing is said. Now from this silence one of four things must be true. Either when thus injured on the premises he has no right whatever to collect from the fund, or he has the right to collect from both the fund and the stranger, or only from one and then with waiver as to the other, or lastly only from one without waiver. The second conclusion is grossly improbable; the third would unfairly make him elect at his peril; the last, plausible, is illogical, for since he has to elect when the third person injures him off the premises, why not when injured upon them too? What possible reason for the right or necessity in one case and not in the other? Nothing answers this satisfactorily except the first conclusion, that when injured upon the premises only one defendant is possible. This conclusion is irresistibly supported, first, by the words, "in lieu of any persons whomsoever," found in the compensation section al-

ready quoted; second, by the arrangement of the words "in course of employment," and lastly by the policy of this act which may well be supposed to end debate over involved situations while furnishing to the master the highest inducement to protect his workmen from inquisitive strangers, meddlers, careless cooperating employees, or dangerous persons of any sort.

In fine, this difference between the main clause and the proviso lies in the act's conceding an exclusive claim against the employer for all injuries on the premises by strangers. This last was reasonable. When an injury thus occurs, there must so often be involved the relations of the employer with that stranger or the character of the employment itself as inviting strangers, that we can see a policy of unqualified right against the fund. Suppose a visitor invited to the factory by the employer cause the injury. Is the fund liable? If so, is it liable also when the visitor comes without invitation? Is it liable if the injury occur in a room where the stranger ought not to have come and the workman, knowing he ought not to have come, should have put him out? Endless are these distinctions. Is a dray company to answer for an injury to a factory hand caused by one of its teams in a part of the factory where the owner of the factory ought not to have let it come? Is the fund to be sued or the dray company? Why is the workman compelled to make the perplexing decision? Why is it not better policy that the master shall keep his premises at all times secure?

That against some third persons the workman has no suit for injuries on the premises this court has already decided. Even without considering the proviso about injuries off the premises (a portion of the statute not pressed upon the attention of the court), we held in *Peet v. Mills*, 76 Wash. 437, 136 Pac. 685, Ann. Cas. 1915 D. 154, L. R. A. 1916 A. 358, that the fifth section, stating the compensation to be "in lieu of any and all rights of action whatsoever against any person whomsoever," prevents personal suit against the presi-

dent of a railway company for injuries in the company's operation, though to him personally the particular neglect was charged. The workman's claim must be against the fund. We made emphatic not only the words just quoted from the act itself, but also that the compensation was to cover as we expressed it ourselves, "every injury sustained by any workman while employed in any such industry, regardless of the cause of the injury or the negligence to which it might be attributed," because the statute said that the abolition of actions theretofore existing was "irrespective of the persons in favor of whom or against whom such right might have existed."

Just before this decision Judge Cushman in the Federal district court for this district had reached the same conclusion from the statute alone. (*Meese v. Northern Pac. R. Co.*, 206 Fed. 222.) A brewery employee, he held, could not elect to sue a carrier which had injured him at the plant. His judgment was reversed by the circuit court of appeals though our *Peet* case was then before it. It distinguished that case on the ground that the company's president though personally sued must not be treated as a third person or stranger; but the supreme court of the United States has in turn reversed the intermediate court and has construed the *Peet* case as confirming the conclusion of Judge Cushman. *Northern Pac. R. Co. v. Meese*, 239 U. S. 614. Judge Cushman, it may be added, had commented on the force of the proviso in the section we have discussed.

In *Ross v. Erickson Construction Co.*, 89 Wash. 634, 155 Pac. 153, we followed the *Peet* case, and denied the right to sue an employer's surgeon for malpractice after award accepted from the commission for the loss from the injury. The authorities and the purpose of the law were exhaustively reviewed by Justice Chadwick and the conclusion repeated that suit against third persons for injuries on the premises was abolished. The court laid emphasis on that part of the

statute which forever removes "all phases" of the liability
during employment.

Authority accordingly is added to both policy and ex-
pression. The right of suit against third persons for in-
juries on the premises is taken away from the workman. To
whom then does he look? Since the stranger cannot be made
to pay him, the fund must. It would be intolerable to sup-
pose that for this wrong he should have no redress at all.

To pronounce unqualified liability for injuries at the work-
shop grows easier the more it is considered. Shall we re-
pulse the workman injured, say, in voluntarily fighting
flames, or defending his master against assault, or the pas-
sengers on a train from a bandit? These are acts not to
be discouraged and yet not paid for at common law. The
workman who flees at such a time is viewed with contempt.
Is he to pay himself for the burns and blows? The English
courts, we may observe, have compensated "emergency" acts
done in the interest of his employer: *Rees v. Thomas*, 80
L. T. R. 578; *Harrison v. Whitaker Brothers*, 16 T. L. R.
108; *Whelan v. Moore*, 43 Ir. L. T. 205; and even his volun-
tary attempt to save the life of a fellow employee: *Matthews
v. Bedworth*, 1 W. C. C. 124. If our statute aimed to cover
them all it is not extraordinary. Even a few unusual causes
of injury may well be charged to the fund, some of which
will on reflection, it may be added, be found less unfair to
the employer than at first consideration. Let us take an
example. To say that the master notwithstanding the
strength of "fortuitous event" might be liable if the work-
man was struck by lightning, seems at first preposterous.
But let us look at the workman's point of view. The latter
argues in effect, that if he had not been at the factory that
day he would not have been struck by lightning, that it was
the purpose of this act to give the workman every reason for
fidelity and courage at the place of work, that part of the
basis for the statute was the fact that the workman can
seldom carry his own insurance, and that on his sudden death

his widow and children are too often a charge upon the community.

The purpose to get rid of contention is the plainer when we consider in how many adjudicated cases under the other statutes the injured man is forced to argue about "arising out of the employment." Notwithstanding that noon recesses at the workshop are generally conceded to be hours of employment in those statutes, we have a workman in one decision injured while going from a higher to a lower floor at noon to receive a free lunch served by the employer. He must go to law about it. Was he or was he not in the course of employment? Again, a workman's claim was contested when during excessively hot weather he went to the roof in working hours for cooler air and fell to the street. So, a boy employed to piece together broken ends of yarn good-naturedly attempted to clean a machine and was injured. Not hired to clean machines, he was held not to have been hurt "in the course of employment." Such are the debates on which claimants really within the purpose of these laws have often had to waste their compensation in other jurisdictions.

Let it be remembered, too, that the employer himself is no longer liable, that doctrines which might seem harsh were this an employer's liability act or the common law still prevailing, are now reasonable under assessment upon the industry at large. This insurance scheme is founded on contributions on both sides, the workman contributing his reduced damages, the employer getting that and conceding more liabilities.

The best argument against the construction to which we are tending would be that under it recovery would be possible for some fortuitous events that under no circumstances could spring from a fault of the employer. Yet the further we search the more difficult it is to find any such. Death by lightning, it might be said, would be an instance, death from a wanton pistol shot. As to the latter the English courts

have had to arrive at a conclusion. A gamekeeper was shot by a poacher. Even under the rigid English act, "accident arising out of" the employment, it was finally held that this was an accident (though the common understanding of that term is certainly not death by assault), and that it arose out of the employment. *Anderson v. Balfour*, 2 Ir. Rep. (1910) 497. Now if this be thought a conclusion none too strong, what shall be said about the case of the cashier who, while carrying his master's money, was assaulted and robbed? This was held to be an accident arising out of an employment. *Nisbet v. Rayne*, 2 K. B. (1910) 689. So as to injury from lightning. Some situations during storms are more hazardous than others. Various kinds of machines invite the electrical contact from the skies while others do not. In short, the employment or the orders of the master may have a good deal to do with the injury of the workman in an electrical storm. A case has recently been decided in Minnesota, where a driver struck by lightning was allowed judgment as from an accident: *State ex rel. People's Coal & Ice Co. v. District Court* (Minn.), 153 N. W. 119. So in the English case of *Andrew v. Failsworth Industrial Society*, 90 L. T. R. 611, the master was held liable for death by lightning when the workman during the storm was at work on the top of a building.

Now, if there be any occasion in which damages can be had for death from lightning, the policy of our law might be to have no debate about it in any instance, because if the workman must contend when he has not the right to recover, he will have to contend also when he has the right to recover. Let us recur to the child who was injured in oiling machinery when he was hired only to work at strands of yarn. From an economic, sociological standpoint it is waste to throw the child helpless upon society for what may have been a well-intended though mistaken act during employment. If he has to debate in a situation like that, then he

may have to debate when he walks from his own machine to lend a hand at a co-worker's machine on the other side of the room.

To seek authority in the decisions of other states is useless, for other statutes have no resemblance to ours. Those decisions are but painful struggles at interpretation of "arising out of," "accident," and "course of employment," which we believe were intentionally left out of our statute. Only one good is found in looking at those cases. They show what evils of litigation are escaped in our enactment. For instance, the Connecticut case of *Mann v. Glastonbury Knitting Co.* (Conn.), 96 Atl. 368. A room was heated by a pipe two feet in diameter, which brought in warm air. With the acquiescence of the employer workmen would place coffee bottles at the mouth of this pipe, but when one placing his at another opening was injured by a revolving fan, it was held that the injury did not "arise from the employment," notwithstanding it was conceded that employers were liable for injuries suffered by workmen in doing something "outside of obligatory duty permitted for mutual convenience, such as eating his dinner on the premises." These cases show the refinements to which courts are driven, the contests which workmen have to make at every turn under statutes of a qualified sort, that the new controversies over "arising out of" are but revivals of old contests over contributory negligence and assumed risk, though to get rid of these was the express announcement of the law. In our own court an instance is afforded. A workman injured by hernia resulting from a great strain in lifting at his work got his relief only after this court was reached. *Zappala v. Industrial Insurance Commission*, 82 Wash. 314, 144 Pac. 54, L. R. A. 1916 A. 295. It is perfectly plain that there was a charge which the industry should bear, but assuming in this act the word "accident" and the phrase "arising out of the employ- ment," contest was at once made possible and contest was

prolonged.   Another instance of our own is *Wendt v. Industrial Insurance Commission,* 80 Wash. 111, 141 Pac. 311. A carpenter in a department store turns on an electric switch in a repair shop to start the wheel on which he would grind a tool.   The electricity was not in his care or department.   He was compelled to obtain the decision of our highest court before he could get his redress.

We decline to read into our act either the narrow word "accident" or the phraseology found in the English and other statutes.   We prefer to leave it the force of clear and positive language designed to cure the past mischiefs of endless contention.   The reports of other states already abound in contests over the new phraseology.   It is for the legislature not for this court to modify, if it appear wise so to do, the plain language of our statute.

We have not overlooked an argument in the word "hazardous" and "extrahazardous."   Since, it is said, the act compensates only persons in such employments, it meant to compensate them merely for injuries arising out of the work. This is fallacious.   In the first place we cannot sustain that construction against plain terminology.   Second, the circumstances show a difference in the intention.   The workman was giving up unlimited damages and trial by jury.   He could in exchange make for his class what terms he pleased, and the statute made those terms between him and his employer.   That nonhazardous employments were not making terms too is of little moment.

"Accident," it is urged, does appear in sundry administrative sections of the act.   Now it does not appear in any parts deliberately stating the basis of compensation, and even injury was powerfully defined as fortuitous event.   "Accident" was used for brevity as a convenient substitute for "fortuitous event" in the administrative details of the act, and no court must construe a statute by general intent against positive definitions.

In one section the employer, being required to make reports of accidents, is directed to state whether the accident "arose out of or in the course of the injured person's employment." By no language whatever is this section made the basis of compensation or so connected with the compensatory provisions of the law as to give it other than statistical value for information to the department. Moreover, in the preceding clause it is stated that the report must be made whenever any accident or injury whatever occurs. This section, in short, makes no attempt to indicate which shall be paid.

In conclusion, even judicial decisions under the qualified statutes show that we can give full vigor to "injured on the premises" without raising a host of claims untolerated elsewhere. We have seen, in a word, the cases of lightning, of protecting a fellow employee, of the engineer killed by the boy from the bridge, of the assaulted cashier, and the assassinated gamekeeper. But since each new situation has always some difference, it is an infirmity if workmen are compelled always to argue over interpretation. Interpretation by instance is endless. The framers of this law having said positively that they wish the jurisdiction of courts ended on these controversies, it is our duty to give liberality as much to that as to other provisions of the law.

The situation indeed does not greatly differ from that which once obtained in life insurance. The early policies reserved to the company a perpetual question for any misrepresentations made to obtain them, and while this right was rarely exercised, yet it was exercised at times, and the right to exercise it was found so disquieting that the practically unqualified policy has taken the place of the other. To obtain this situation under the compensation act was undoubtedly the purpose of the workmen. It is also to our mind the language of the law.

Under our statute the workman is the soldier of organized industry accepting a kind of pension in exchange for absolute insurance on his master's premises.

The judgment of the lower court is reversed and the cause remanded with instructions to enter a judgment against the commission for the amount of appellant's claim.

MORRIS, C. J., MAIN, HOLCOMB, and PARKER, JJ., concur.