[No. 33465. *En Banc.* June 28, 1956.]

WILLIAM H. HAND, *Appellant,* v. GREYHOUND CORPORATION et al., *Respondents.*[1]

[1] Reported in 299 P. (2d) 554.

*Goodwin, Hicks, Malanca & Hager*, for appellant.

*MacBride, Matthews & Hanify*, for respondents.

*Grosscup, Ambler, Stephan & Miller*, amicus curiae.

FINLEY, J.—This is a lawsuit to recover damages for serious personal injuries sustained by the plaintiff when a bus (operated by defendant George L. Falconer, as an employee of the defendant corporation) allegedly negligently crossed the center line of a state highway and collided with and virtually demolished a truck (operated by the plaintiff, William H. Hand, for his employer, the Miller Packing Company).

At the time of the collision, both William H. Hand and George L. Falconer were engaged in extrahazardous employment. They were covered by the workmen's compensation act and were entitled to benefits thereunder. Obviously, their respective employers were engaged in extra-

hazardous employment. Section 3 of the original act, as amended, RCW 51.24.010 (*cf.* Rem. Rev. Stat. (Sup.), § 7675, in part, Laws of 1939, chapter 41, § 2, p. 121), reads:

"Right of action against third party. If the injury to a workman is due to negligence or wrong of another not in the same employ, the injured workman or, if death results from the injury, his widow, children, or dependants, as the case may be, shall elect whether to take under this title or seek a remedy against such other, such election to be in advance of any suit under this section and, if he takes under this title, the cause of action against such other shall be assigned to the state for the benefit of the accident fund; if the other choice is made, the accident fund shall contribute only the deficiency, if any, between the amount of recovery against such third person actually collected and the compensation provided or estimated by this title for such case: *Provided, That no action may be brought against any employer or any workman under this title as a third person if, at the time of the accident, such employer or such workman was in the course of any extrahazardous employment under this title.* Any such cause of action assigned to the state may be prosecuted or compromised by the department in its discretion. Any compromise by the workman of any such suit, which would leave a deficiency to be made good out of the accident fund may be made only with the written approval of the department." (Italics ours.)

The industrial insurance act was enacted by the legislature in 1911. The constitutionality of the act, generally speaking, was upheld in *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101; *Stertz v. Industrial Ins. Comm.*, 91 Wash. 588, 158 Pac. 256; *Mountain Tbr. Co. v. State of Washington*, 243 U. S. 219, 61 L. Ed. 685, 37 S. Ct. 260. The portion of § 3 italicized above was added to the original act by a legislative amendment in 1929 (see chapter 132, § 1, Laws of 1929, p. 325).

In the trial court, the defendants urged that the above italicized portion of § 3 constituted a statutory bar to plaintiff's cause of action. Plaintiff contended that § 3, regarded in its entirety, *established* and *placed him* in an arbitrary and unreasonable classification; and thus, unconstitutionally, it deprived him of his right to institute a common-law

cause of action for personal injuries against the tort-feasor defendants.

The trial court held that the classification effected by § 3 was not an arbitrary one but was a reasonable one within the police power of the state; in other words, that the portion of § 3 italicized above was constitutionally valid and a bar to plaintiff's cause of action. Defendants' motion for summary judgment was granted, resulting in dismissal of plaintiff's cause of action. This appeal followed.

Here on appeal, the appellant contends that the workmen's compensation act, as originally conceived, related to relationships between employees and *their* employers, but not to relationships between employees and employers other than their own. Stated differently, the contention is that the basic purpose of the proviso (added to § 3 by the 1929 amendment) is inconsistent with the basic purposes of the act.

Perhaps appellant's analysis would be more appropriate in relation to employer liability legislation. In *Stertz v. Industrial Ins. Comm.*, *supra*, at p. 594, the court clearly distinguished our workmen's compensation act from legislation enacted elsewhere relative to the subject of industrial injuries by saying:

"To resume, ours *is not an employer's liability act. It is not even an ordinary compensation act. It is an industrial insurance statute.* Its administrative body is entitled the industrial insurance commission. *All the features of an insurance act are present.* Not only are all remedies between master and servant abolished, and, in the words of the statute, all phases of them withdrawn from private controversy, but the employee is no longer to look to the master even for the scheduled and mandatory compensation. *He must look only to a fund fed by various employers.* When the employer, for his part, pays his share into this fund, all obligation on his part to anybody is ended. Let a claim be rejected by the commission, the latter and not the employer is to be sued. Nor is the commission so much as selected by the parties. The state administers the fund. *Few foreign countries had yet adopted a scheme so comprehensive. Germany alone furnished a precedent. In subsequent legislation in this country only one or two states have adopted*

*this principle and none have pushed it so far."* (Italics ours.)

In *State ex rel. Davis-Smith Co. v. Clausen, supra,* the court, referring to the fundamental aims and objectives of the workmen's compensation act, stated:

"It is founded on the basic principle that certain *defined industries,* called in the act extra hazardous, *should be made to bear the financial losses sustained by the workmen engaged therein through personal injuries, and its purpose is to furnish a remedy that will reach every injury sustained by a workman engaged in any of such industries,* and make a sure and certain award therefor, bearing a just proportion to the loss sustained, *regardless of the manner in which the injury was received."* (Italics ours.)

And, at p. 209, the court further stated:

"The common law system of making awards for personal injuries has no such inherent merit as to make a change undesirable. While courts have often said that the question of the amount of compensation to be awarded for a personal injury is one peculiarly within the province of the jury to determine, the remark has been induced rather because no better method for solving the problem is afforded by that system than because of the belief that no better method could be devised."

The decisions of this court and of the United States supreme court, cited above, indicate the broad purposes and the sweeping implications of our workmen's compensation act. It has been stated quite positively that the basic purposes of the act are (a) to provide industrial insurance for employees injured in extrahazardous employment, in lieu of common-law actions for damages against tort-feasors; and (b) to impose the financial cost of such industrial insurance generally upon employers engaged in extrahazardous industry.

We do not agree with appellant's argument that the act should be limited strictly to the matter of employment relationships as between employees and *their employers.* We are convinced that the legislature's purpose, inherent in the enactment of the 1929 amendment, is not inconsistent with the fundamental purposes of the act.

The appellant reasserts on appeal the argument advanced by him in the trial court: that § 3, considered in its entirety, places him in arbitrary, unconstitutional classification, in that (a) he is barred from suing respondents in a common-law tort action, while (b) other workmen (under the act) injured by a third-party tort-feasor (not covered under the act, *i.e.*, not engaged in extrahazardous employment) are not barred from instituting common-law tort actions in the courts and may elect whether to do so or to take the industrial insurance benefits available under the act. In support of this contention, appellant strongly relies upon *Grasse v. Dealer's Transport Co.*, 412 Ill. 179, 106 N. E. (2d) 124 (decided March 20, 1952).

In our evaluation of the *Grasse* case, *supra*, we are constrained to make the following observations. The Illinois act may be characterized as an employer-liability statute rather than an industrial insurance act, such as we have in the state of Washington. Under the Illinois act, compensation or benefits to which an injured workman is entitled are paid, not from a special trust fund administered by the state, but by the employer of the particular workman. Section 29 of the Illinois act deprived an injured workman of his right to a common-law cause of action, in effect transferring any such cause of action (at least in part) to his employer, and permitting the latter to recover from a third-party tort-feasor for the amount of compensation to which the injured employee was entitled under the Illinois act.

Among other things, the Illinois court pointed out that compensation due to an injured workman might not be forthcoming or recoverable from an insolvent employer; and that to deprive the injured employee of his common-law cause of action against a third-party tort-feasor, under the circumstances, would be unreasonable. The Illinois court was further of the opinion that the employer's immunity from liability, contemplated by § 29 of the Illinois statute, granted a special privilege to employers in violation of a specific provision of the Illinois constitution. Lastly, the Illinois court was of the view that § 29 estab-

lished an arbitrary, unreasonable classification as to workmen injured in industrial accidents.

We think the *Grasse* case is distinguishable on the basis of the difference between the Illinois statute and our own workmen's compensation act. In any event, we are not inclined to follow the reasoning or to feel that the results reached in the *Grasse* case are controlling as to our disposition of the instant case.

Appellant emphasizes the fact that the accident and the injury to him will not affect the respondent-employer's safety record or its rate of contributions to the industrial insurance trust fund; in other words, that there is no *quid pro quo*, or consideration, for the immunity from suit afforded to respondents by the 1929 amendment to § 3 of the act. However, we have heretofore indicated that employers, as a class, contribute generally to a state-administered trust fund. This fund, rather than the particular employer, bears the cost of industrial insurance benefits paid to the particular employee.

It is our view that § 3, as amended, together with other provisions of the act, places all employers engaged in extrahazardous industry in one broad, inclusive classification, requiring them to contribute generally to a state-administered industrial-insurance trust fund. Furthermore, that employees injured in the course of extrahazardous employment (workmen as defined in the act) are placed in one broad, inclusive classification. The latter are entitled to receive industrial insurance benefits, the cost of which is borne by the state-administered trust fund made possible by general employer contributions mentioned above. Workmen (as defined in the act) are barred from common-law tort actions respecting industrial injuries.

In establishing this broad and sweeping state policy respecting industrial injuries, the legislature made only one exception. This arises when a workman is injured through the negligence or wrong of a third-party tort-feasor (an employee not in the same employ, or the latter's employer), *not covered by the act*. In the latter instances, an injured employee may elect to institute a common-law tort action

against the so-called third party (noncovered tort-feasor), or to take the benefits provided under the act.

█ The legislative policy inherent in § 3, as amended, and the broad classifications established by it and other provisions of the act, appear to us to be reasonable and constitutionally valid ones.

In *State ex rel. Davis-Smith Co. v. Clausen, supra,* at p. 195, the court stated:

"If, therefore, the act in controversy has a reasonable relation to the protection of the public health, morals, safety or welfare, it is not to be set aside because it may incidentally deprive some person of his property without fault or take the property of one person to pay the obligations of another. To be fatally defective in these respects, the regulation must be so utterly unreasonable and so extravagant in nature and purpose as to capriciously interfere with and destroy private rights."

Lastly, appellant urges that § 3 is unreasonable and arbitrary as to him because, under *Latimer v. Western Machinery Exchange,* 42 Wn. (2d) 756, 259 P. (2d) 623, he could be sued by some employer, while under *Jewett v. Kerwood,* 43 Wn. (2d) 691, 263 P. (2d) 830, the appellant could not sue the employer.

In the first place, *Latimer* and *Jewett* should not be regarded, necessarily, as companion cases, the one being the counterpart of the other. In *Latimer,* the employer was self-employed and had not *personally* qualified for benefits under the act. There were no employees as to whom Latimer was paying industrial insurance premiums. In the *Jewett* case, the employer had not *personally* qualified for benefits, but he *was* paying industrial insurance premiums as to certain of his employees. In any event, the appellant's present lawsuit is not against an employer involved in a factual situation comparable to that of the employers in either *Latimer* or *Jewett.* Appellant's lawsuit is against respondent Falconer, a workman as defined in the act; and against respondent Greyhound Corporation, an employer engaged in extrahazardous employment under the act. The argument advanced by appellant seems to us to be a hypo-

thetical one, not necessarily pertinent to the instant case, and we refrain from passing upon it until the question actually is presented by the facts in a case on appeal to this court.

The judgment of the legislature as to the reasonableness of the proviso (1929 amendment to § 3) has stood for approximately thirty years, apparently without being seriously questioned in the courts on constitutional grounds. In the exercise of our best judgment, we are inclined to the view that § 3, as amended, does not involve an arbitrary, unreasonable classification; that it is constitutional and a bar to appellant's common-law tort action for personal injuries.

The judgment of the trial court should be affirmed. It is so ordered.

HAMLEY, C. J., MALLERY, SCHWELLENBACH, DONWORTH, HILL, WEAVER, and OTT, JJ., concur.

ROSELLINI, J. (dissenting)—The majority admit that § 2, Laws of 1939, chapter 41, p. 121 [*cf.* RCW 51.24.010], may be arbitrary and unreasonable under the results reached in *Latimer v. Western Machinery Exchange,* 42 Wn. (2d) 756, 259 P. (2d) 623, and *Jewett v. Kerwood,* 43 Wn. (2d) 691, 263 P. (2d) 830, but decline to declare the statute invalid because they conclude that such an attack upon the statute is hypothetical and not necessarily pertinent to the instant case.

In the *Jewett* case, we held that an employer driving his own truck in an extrahazardous occupation who negligently injured an employee engaged in another extrahazardous employment was immune from suit by the injured workman.

We held in the *Latimer* case and in *Pink v. Rayonier, Inc.,* 42 Wn. (2d) 768, 259 P. (2d) 629, that a self-employed individual engaged in an extrahazardous occupation is not barred from asserting his common-law action against another employer, or his employee, covered by the industrial insurance act.

The rationale of these cases inevitably will lead to the result that an employee who negligently injures an employer other than his own is subject to a common-law action, although he is barred from maintaining such an action if he is injured by that employer.

It is a well-settled rule of law that a statute cannot be sustained where it appears that the classification applies in some instances and does not apply in other cases essentially not different. In the case of *Grasse v. Dealer's Transport Co.*, 412 Ill. 179, 106 N. E. (2d) 124, a provision similar to § 2, *supra*, was declared unconstitutional on the ground that the classification was arbitrary and unreasonable. The court stated:

"Those injured by third party tort-feasors bound by the act are not entitled to common-law damages from such persons, whereas those injured by third party tort-feasors not bound by the act are allowed to institute actions for damages. Both classes of injured employees may be entitled to compensation from their own employers, so that the amount of compensation, if any, received by the injured employee is not the basis for differentiation between the classes. Nor is there any basis for differentiation from the nature of the injuries sustained, or from the activity of the employee at the time of the injury, or from any other factor ordinarily related to an injured party's right to recover damages. The sole basis for differentiation, as far as the injured employee is concerned, is a fortuitous circumstance—whether the third party tort-feasor happens to be under the act.

"It is readily apparent that there is no rational difference between an employee injured in the course of his employment by a motorbus, and one injured by a farmer's truck. Each may sustain the same injuries, and be entitled to the same amount of compensation from their employers; neither had any control over the circumstances of their injuries, or the status of the party who hit them, yet in one case the statute authorizes the employee to recover damages from the third party, and in the other case the employee must be content with the amount of compensation he may be entitled to receive from his employer."

I do not agree with the conclusion reached in the majority opinion that the appellant's attack upon the invalidity of this statute is hypothetical and not pertinent to this case,

for the reason that the validity of the statute has been attacked and the arguments directed to its invalidity have been presented to this court in this appeal. The court has decided that the classification is not arbitrary, thus ruling upon the question presented without answering the objection raised.

The right to redress for a wrong suffered by a workman is a substantial one. Relegating the workman to the accident fund for payment for an injury received at the hands of a third party tort-feasor will result in the instant case in a denial of compensation for a portion of the injury not compensable under the workmen's compensation act.

The appellant alleges that he has suffered severe burns, and that he will have permanent and lasting disfigurement to his face and to his hands and that plastic surgery alone will cost several thousand dollars and will not correct his condition. The act provides no compensation for such an injury. 2 Larson, Workmen's Compensation, 138, § 65.30.

The classification giving to employers immunity from suit is also arbitrary, for it does not effectuate the purpose of the act, which is to place upon the industry the burden of the losses sustained by injured employees. The employer's protection against suit by the employee is justified by the fact that the employer pays for this protection based upon his own cost experience. The cost experience of the third-party employer is not charged with the loss where the injury is sustained by the workman as a result of the third-party employer's negligence. Instead, the loss is charged to the employer of the injured workman. *Boeing Aircraft Co. v. Department of Labor & Industries*, 22 Wn. (2d) 423, 156 P. (2d) 640. Thus, the immunity of the third-party employer operates to increase the liability of the injured workman's employer, who is without fault and is ordinarily not in a position to protect the workman from such injuries.

I would reverse the judgment of the trial court.