[No. 45050. En Banc. July 27, 1978.]

LOREN DAVIS, *Respondent*, v. NIAGARA MACHINE COMPANY, *Appellant*, BUYKEN STAMPING & MACHINE WORKS, *Respondent*.

*Reed, McClure, Moceri & Thonn, P.S.,* by *Anne Bradley* and *William R. Hickman,* for appellant.

*Detels, Draper & Marinkovich,* by *Ronald A. Bergman,* for respondents.

HICKS, J.—Niagara Machine Company appeals from a summary judgment dismissing its third–party claim for indemnification against Buyken Stamping & Machine Works in a personal injury action brought by Buyken's employee against Niagara. The trial court dismissed the claim on the ground that Buyken was immune from suit under RCW Title 51, the industrial insurance act. The Court of Appeals certified the case to this court. We affirm the trial court.

In 1924, Niagara manufactured a punch press which was sold in 1925. The machine was capable of performing numerous operations and no all–inclusive guard could properly protect the operator from all of the possible dangers associated with its use. Thus, the machine was sold without a guard with the expectation that it would be equipped by the purchaser to safely perform the particular task required of it.

Buyken purchased the punch press second– or third–hand in the 1950's. In 1971, Martin, a Buyken employee, was injured when he tripped the foot pedal which activates the machine, while his hands were in the cutting die area. An action brought by Martin against Niagara was settled.

Following that settlement, Niagara sent a letter to Buyken informing it of the Martin lawsuit. The letter advised that certain operations should not be performed on the machine unless a point of operation guard was in place, and requested that enclosed warning tags be placed on the press. The tags read:

WARNING
To prevent serious bodily injury
Never place any part of your body under the slide (ram) or within the die area unless power is off, flywheel is stopped and the slide (ram) is blocked up.
Never operate, install dies or maintain this machine without proper instruction and without first reading and understanding the operator's or machine manual.
It is the employer's responsibility to implement the above and also to provide proper dies, guards, devices or means that may be necessary or required for any particular use, operation, set–up or service.

Buyken did not install a point of operation guard, but did attach one of the tags to the press on which Martin had been injured. Buyken also requested additional tags, which Niagara supplied.

In 1975, Davis, a Buyken employee, injured the fingers of his left hand on the same press and in much the same way as had Martin. Davis applied for and received workman's compensation under the industrial insurance act. He then

brought an action against Niagara asserting that the press was unsafe and designed in a dangerously defective manner.

Niagara responded by filing a third–party claim against Buyken, alleging that Buyken's failure to provide a point of operation guard was the cause of Davis' injury. Niagara demanded indemnity and reimbursement from Buyken.

The trial court granted Buyken's motion for summary judgment, holding that under RCW Title 51 Buyken was immune from liability. Niagara appeals from that judgment. Davis' claim against Niagara was settled prior to the time the appeal was heard in this court.

Niagara posits the issues to be determined on appeal as follows: (1) Whether this court should limit the broad language of *Montoya v. Greenway Aluminum Co.*, 10 Wn. App. 630, 519 P.2d 22 (1974), in light of the injustice it works in this case; and (2) Whether a machinery manufacturer held strictly liable without proof of negligence to an injured workman, may maintain an action for damages, indemnity or contribution from the workman's employer where the employer was negligent with respect to both the workman and the manufacturer, but where there is no express contract of indemnity between the employer and manufacturer.

Initially, we must reject any consideration of Niagara's contribution claim. That theory of recovery was not presented to the trial court and, accordingly, is not at issue on appeal. *Talps v. Arreola*, 83 Wn.2d 655, 658, 521 P.2d 206 (1974).

As to the claim of indemnity, Niagara must first establish that a recognized ground for imposing indemnity against Buyken exists. Thereafter, it may be faced with the contention that such liability is within the immunity provided to employers by RCW Title 51. *Montoya v. Greenway Aluminum Co., supra; Tucci & Sons, Inc. v. Carl T. Madsen, Inc.*, 1 Wn. App. 1035, 467 P.2d 386 (1970).

Niagara bases its indemnity claim against Buyken upon three separate grounds: (1) that Buyken breached a duty to

Niagara, arising under RCW 49.17, the Washington Industrial Safety and Health Act of 1973 (WISHA) and 29 U.S.C. § 651 (1970), the federal Occupational Safety and Health Act (OSHA); (2) that Buyken breached a duty to provide a point of operation guard which it undertook when it attached a warning tag to the punch press at Niagara's request; and (3) that any liability Niagara had to Buyken's employee, Davis, was a consequential damage of Buyken's breach of an implied contract not to use the press in a dangerous manner.

■■ As to the first of these grounds, WISHA and OSHA do establish regulations governing the use of a punch press such as the one involved here. From the record it appears that the relevant regulations under both acts were violated by Buyken's operation of this press. These standards should be enforced and it is disturbing to learn of similar accidents some years apart, apparently indicating a failure on the part of the State to enforce safety regulations. However, without some indication from the legislature, we are unable to find that these regulations create a duty running from the owner of a machine to its manufacturer. While a duty may, in some circumstances, be founded on a statute or regulation, that duty extends only to persons in the class intended to be protected by the statute or regulation. *Wells v. Vancouver*, 77 Wn.2d 800, 804, 467 P.2d 292 (1970). OSHA and WISHA were enacted to assure safe and healthful working conditions for employees. *See* 29 U.S.C. § 651 (1970); RCW 49.17.010. We are not referred to any provision of either act which suggests an intent to protect third-party manufacturers. Since both acts were intended only to protect the class consisting of employees and workers, they do not create a duty in the employer which extends to the manufacturer.[1] Accordingly, Niagara's contention that an indemnity claim could be grounded on these statutes is without merit.

---

[1] We do not wish to suggest that OSHA creates a private cause of action in an injured employee. That possibility has been foreclosed. 29 U.S.C. § 653(4) (1970); *Jeter v. St. Regis Paper Co.*, 507 F.2d 973 (5th Cir. 1975), *but see Bayne v. Todd*

Regarding Niagara's second claim, we do not find in the actions of the parties or in the sparse exchange of correspondence between them anything that may be construed as an assumption by Buyken of a duty to do anything more than it did. Even in the context of the previous injury to Martin and the resulting lawsuit, the exchange of letters indicates at most that Buyken undertook to attach the tags. We can find no promise, express or implied, that it would do more. Buyken did not agree to limit the use of the press in the manner Niagara advised nor did it agree to indemnify Niagara for any liability it might incur as a result of improper use.

■ We also find Niagara's third ground in support of its indemnity claim to be without merit. The circumstances of this case simply do not support the implication of a contract. As we stated in *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.,* 49 Wn.2d 363, 367–68, 301 P.2d 759 (1956):

> On at least four occasions (*Troyer v. Fox,* 162 Wash. 537, 554, 298 Pac. 733, 77 A. L. R. 1132 (1931); *McKevitt v. Golden Age Breweries,* 14 Wn. (2d) 50, 52, 126 P. (2d) 1077 (1942); *Kellogg v. Gleeson,* 27 Wn. (2d) 501, 505, 178 P. (2d) 969 (1947); *Ross v. Raymer,* 32 Wn. (2d) 128, 138, 201 P. (2d) 129 (1948)), this court has quoted with approval a definition of a contract implied in fact, appearing in *Western Oil Refining Co. v. Underwood,* 83 Ind. App. 488, 491, 149 N. E. 85 (1925), as follows:
>
> "A true implied contract is an agreement of the parties arrived at from their acts and conduct viewed in the light of surrounding circumstances, and not from their words, either spoken or written. *Like an express contract, it grows out of the intentions of the parties to the transaction, and there must be a meeting of minds. Such a contract differs from an express contract only in the mode of proof.*"

As stated above, we find nothing in the facts and circumstances of this case that demonstrates an intention on the

---

*Shipyards Corp.,* 88 Wn.2d 917, 568 P.2d 771 (1977) regarding RCW 49.16 which was repealed and replaced by Laws of 1973, ch. 80, codified in RCW 49.17 (WISHA).

part of Buyken to do anything that would support Niagara's claim of indemnity.

We are satisfied that Niagara cannot establish any of the claimed bases for its indemnity action. We are mindful of the fact that this case was decided on motion for summary judgment and that in such a case all evidence and reasonable inferences therefrom must be considered in favor of the nonmoving party. *Wilber Dev. Corp. v. Les Rowland Constr., Inc.,* 83 Wn.2d 871, 523 P.2d 186 (1974). Summary judgment is proper here, however, where reasonable men could reach but one conclusion.

While the trial court held that under RCW Title 51 Buyken was immune from the action by Niagara and granted Buyken's motion for summary judgment on that basis, we find it unnecessary to decide the case on that ground. The trial court will be upheld upon any theory supported by the pleadings and the evidence. *Northwest Collectors, Inc. v. Enders,* 74 Wn.2d 585, 595, 446 P.2d 200 (1968). In this case, the record and briefs contain argument and evidence as to the bases for the indemnity claim as well as to the effect of RCW Title 51. The theories upon which Niagara rests its claim for indemnity were sufficiently presented for the court to give them consideration. Based upon that presentation, we have no hesitation in upholding the trial court on the basis that no ground for Niagara's indemnity claim exists.

We see no necessity to examine *Montoya v. Greenway Aluminum Co.,* 10 Wn. App. 630, 519 P.2d 22 (1974). Since Niagara did not establish a basis for its claim of indemnity, we do not reach the issue of whether such a claim might be barred by RCW Title 51. Nor do we discuss Niagara's argument that a statutory bar to its indemnity action would violate its due process and equal protection rights under the United States and state constitutions. Since we do not base our decision on RCW Title 51, we do not reach the issue of its constitutionality.

While the above is dispositive of this case which makes it unnecessary to consider the impact of RCW Title 51, an

action may come before this court that will require consideration of this chapter as a bar.

Over the years, the legislature has tried various schemes as regards third–party actions. At no time, however, has the focus been on such a factual matter as exemplified by this case. A third party, completely outside the purview of the act, who has been charged in an employee's injury action and who may be required to respond in damages, alleges the entire fault for the employee's injury rests with the employer.[2] Even though some measure of fault is finally ascribed to the third party, if the substantial measure of fault lies with the employer, should the third party be compelled to shoulder the entire burden of damages because of RCW Title 51, or should some more equitable result be reached? This question raises policy issues that could be beneficially considered by the legislature in light of the goals of the entire industrial insurance scheme.

Affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

---

[2] An allegation of entire fault on the part of the employer if proved in the action between the employee and the manufacturer would, of course, result in no liability to the manufacturer. That issue was not resolved by trial in this case, as Niagara elected to settle with the employee.