[No. 3444–II.   Division Two.   April 21, 1980.]

CARL T. MADSEN, INC., *Respondent,* v. BABLER
BROTHERS, INC., ET AL, *Appellants.*

*William P. Fite,* for appellants.

*Richard J. Thorpe,* for respondent.

REED, C.J.—Defendants Babler Brothers, Inc. (Babler)
and Harbor Insurance Company, Inc. (Harbor) seek review
of the trial court's grant of summary judgment in favor of

plaintiff Carl T. Madsen, Inc. (Madsen). Madsen brought this action for declaratory judgment in an effort to absolve itself from liability under an alleged agreement to indemnify Babler. Upon cross motions for summary judgment the trial court concluded that plaintiff was entitled to judgment as a matter of law. It granted plaintiff's and denied defendants' motions for summary judgment. We affirm.

In early 1972, Babler contracted with the State of Washington to construct a bypass highway in the vicinity of Goldendale. Babler, acting as general contractor, subcontracted with Madsen for installation of the highway's illumination system. Gaynor Lorentzen, an employee of Madsen, was injured when a light pole he was installing came in contact with overhead power lines. Some time thereafter, Lorentzen brought an action against the State, Babler, and the Klickitat County Public Utilities District (PUD) to recover compensation for his injuries. Madsen was not made a party to the Lorentzen lawsuit, presumably because of its immunity from direct liability to employees under the industrial insurance act.[1]

When the Lorentzen action was filed the State tendered the defense to Babler. Because Babler was obligated to hold the State harmless for Babler's own acts, the acts of its subcontractors or employees,[2] Babler accepted the tendered defense. Babler, in turn, tendered the defense to Madsen under a claimed contract of indemnity running

---

[1]*See* RCW 51.04.010 *et seq.*

[2]The contract between the State of Washington and Babler Brothers, Inc., made reference to and expressly incorporated the standard specifications of the Washington State Highway Commission. Those specifications, *inter alia*, provided as follows:

"The Contractor at all times shall comply with federal and state laws, local laws and ordinances, and any regulations which in any manner affect the performance of the contract. He shall indemnify and save harmless the State, the Commission, the Director and any agents, officers or employees thereof against any claims arising from any violation of any such laws, ordinances, or regulations, whether such violations are by the Contractor, his subcontractors, or employees. [1–07.1]

". . .

from Madsen to Babler. Madsen declined the tendered defense and brought this action for declaratory judgment.

On December 10, 1976, while the action for declaratory judgment was still pending in the trial court, the jury in the Lorentzen lawsuit returned a plaintiff's verdict for $350,000 against all three defendants. Babler's post–trial motion for a judgment n.o.v. was granted because "there was no evidence of defendant Babler's negligence." Similar motions by the State and Klickitat County PUD were denied. Their liability apparently was predicated upon negligent failure to elevate the power lines to a height enabling safe installation of the roadside light posts. Despite the absence of Babler's direct liability to Lorentzen, Babler's insurer, Harbor,[3] settled Lorentzen's claim against the State for $115,000 in a post–trial settlement agreement. Babler and Harbor then counterclaimed in the declaratory judgment action, seeking indemnity from Madsen for the $115,000 settlement. The trial court reviewed the cross motions for

---

"The State, Commission, Director, and all officers and employees of the State, including but not limited to those of the Department, shall not be responsible in any manner: for any loss or damage that may happen to the work or any part thereof; for any loss of material or damage to any of the materials or other things used or employed in the performance of work; for injury to or death of any persons, either workmen or the public; or for damage to the public for any cause which might have been prevented by the Contractor, or his workmen, or anyone employed by him.

"The Contractor shall be responsible for any liability imposed by law for injuries to, or the death of, any persons or damages to property resulting from any cause whatsoever during his performance of the work, or before final acceptance.

"The Contractor shall indemnify and save harmless the State, Commission, Director, and all officers and employees of the State, from all claims, suits or actions brought for injuries to, or death of, any persons or damages resulting from construction of the work or in consequence of any negligence regarding the work, the use of any improper materials in the work, caused in whole or in part by any act or omission by the Contractor or his agents or employees during performance or at any time before final acceptance." [1–07.14]

[3]Pursuant to Babler's contract with the State, both Babler Brothers, Inc., and the State were named insureds on the liability policy with Harbor Insurance Company, Inc.

summary judgment, and ruled *in favor of* Madsen and against Babler.

On appeal Babler contends that Madsen impliedly agreed to indemnify Babler. Madsen denies the existence of any such agreement and further asserts it is immune from liability under the state industrial insurance act, RCW 51.04.010 *et seq.*

■ Although the industrial insurance act "immunizes" participating employers from third-party claims arising out of negligent injury to their workers, our courts have recognized a right of action where the employer has voluntarily assumed an independent duty or obligation to indemnify such a third party. *Seattle–First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 588 P.2d 1308 (1978). *See, e.g., Redford v. Seattle*, 24 Wn. App. 484, 602 P.2d 717 (1979). *See also Davis v. Niagara Mach. Co.*, 90 Wn.2d 342, 581 P.2d 1344 (1978); *Olch v. Pacific Press & Shear Co.*, 19 Wn. App. 89, 573 P.2d 1355 (1978); *Montoya v. Greenway Aluminum, Inc.*, 10 Wn. App. 630, 519 P.2d 22 (1974); and *Tucci & Sons, Inc. v. Carl T. Madsen, Inc.*, 1 Wn. App. 1035, 467 P.2d 386 (1970). So long as the claim of indemnity arises on account of a separate obligation running from the employer to the third party and not merely because the employer's negligence caused the employee's injury, an action for indemnification is judicially cognizable. *Seattle–First Nat'l Bank v. Shoreline Concrete Co., supra.* See 2A A. Larson, *The Law of Workmen's Compensation* § 76.40 *et seq.* (1976). Although the independent *duty* running between an employer and third party cannot arise solely by implication, *Olch v. Pacific Press & Shear Co., supra* at 94; *Montoya v. Greenway Aluminum, Inc., supra* at 635, where the independent duty is expressly provided for in the contract, the implied right to indemnification may be found. *See Davis v. Niagara Mach. Co., supra* at 347.

It is conceded that the Babler–Madsen contract contains no express language of indemnification such as is found in the prime contract between the State and Babler. Babler argues, however, that an agreement to indemnify can be

implied from the fact that Madsen undertook an independent duty to abide by certain federal safety and health regulations pertaining to the work.[4] *See generally Ryan Stevedoring Co. v. Pan–Atlantic S.S. Corp.,* 350 U.S. 124, 100 L. Ed. 133, 76 S. Ct. 232 (1955); *San Francisco Unified School Dist. v. California Bldg. Maintenance Co.,* 162 Cal. App. 2d 434, 328 P.2d 785 (1958), and cases cited therein. According to Babler, Lorentzen's injury had to have occurred because of Madsen's violation of one or more of these regulations,[5] thus giving rise to Babler's right to reimbursement for its payment to the State.

█ Assuming, without deciding, that the circumstances surrounding the relationship between Babler and Madsen would support a finding of an implied contract of indemnity, it does not follow that Babler has a right to indemnification from Madsen in the circumstances of this case. If

---

[4]Language in Babler's contract with the State provided as follows:

"It is a condition of this contract and shall be made a condition of each subcontract entered into pursuant to this contract that the contractor and any subcontractor shall not require any laborer or mechanic employed in performance of the contract to work in surroundings or under working conditions which are unsanitary, hazardous or dangerous to his health or safety, as determined under construction safety and health standards (Title 29, Code of Federal Regulations, Part 1518, published in the Federal Register on April 17, 1971) promulgated by the United States Secretary of Labor, in accordance with section 107 of the contract Work Hours and Safety Standards Act, (83 Stat. 96.)"

Language in the Babler–Madsen contract incorporated the above passage by providing:

"It is further expressly stipulated and agreed that the subcontractor will conduct and prosecute the work hereinabove described in a manner satisfactory to the engineer, and in strict accordance with the plans and specifications therefor, and that each and every requirement of said Contract No. 9243 governing hours of employment, wage rates, methods of prosecuting the work, and each and every other requirement, stipulation or thing therein set forth and *pertinent to the work* described herein shall govern the *prosecution of the work* under this contract as though fully set forth." (Italics ours.)

[5]One relevant regulation reads as follows:

"(c) Protection of Employees: (1) No employer shall permit an employee to work in such proximity to any part of an electric power circuit that he may contact the same in the course of his work unless the employee is protected against electric shock by deenergizing the circuit and grounding it or by guarding it by effective insulation or other means." 29 C.F.R. § 1926.400(c) (1979).

such an implied contract of indemnity exists, its foundation would rest upon Madsen's duty to exercise due care toward its employees by observing the safety regulations. The apparent intent of the parties was to protect Babler from imputed liability arising vis–a–vis Madsen's negligence. In the instant case, however, Babler's payment to the State was not occasioned by Babler's liability in tort. Rather, it stemmed from Babler's contractual undertaking to hold the State harmless from liability arising in whole or in part from the negligence of Babler's subcontractors.[6] Babler's independent contractual obligations to the State could not form the basis for Madsen's duty to indemnify Babler.

Madsen could be responsible for Babler's liability only if it had agreed to assume Babler's potential liability to both Madsen's employees and the State. The Babler–Madsen contract, however, incorporated only those requirements "pertinent to the work." In other words, Madsen was to follow prescribed methods of prosecuting its work for Babler, but it was not thereby obligated to assume Babler's contractual liability to the State. Such an undertaking would call for a more clear expression of intent. We find no indication of such an intent in the case at bar.[7] The scope of Madsen's implied contract, if found to exist, is not so broad as to exonerate Babler from its contractual liability to the State. As the Lorentzen lawsuit demonstrated, Babler's liability for Lorentzen's injuries flows, not from tortious conduct by Babler (whether direct or imputed), but solely by reason of Babler's contract with the State.

---

[6]See footnote 2, *supra.*

[7]Even if we were to conclude, which we do not, that the language incorporating requirements "pertinent to the work" was ambiguous, several rules of construction direct us to the same conclusion. Not only must an ambiguous contract be construed against the drafter, *Felton v. Menan Starch Co.,* 66 Wn.2d 792, 405 P.2d 585 (1965), but ambiguous indemnity contracts are construed in favor of the indemnitor and against the indemnitee. *Dirk v. Amerco Marketing Co.,* 88 Wn.2d 607, 565 P.2d 90 (1977); *Jones v. Strom Constr. Co.,* 84 Wn.2d 518, 527 P.2d 1115 (1974). Babler Brothers, Inc., was both drafter and indemnitee.

Babler has no right to indemnification from Madsen absent an agreement contemplating such a shift in risk exposure.

Because of our disposition of this appeal, we find it unnecessary to discuss other issues raised.

Affirmed.

PETRIE, J., and JOHNSON, J. Pro Tem., concur.