[No. 48227-6. En Banc. October 7, 1982.]

JAMES GLASS, *Plaintiff,* v. STAHL SPECIALTY COMPANY, *Respondent,* MOREL FOUNDRY CORPORATION, *Petitioner.*

*Robert P. Piper* and *Philip A. Talmadge* (of *Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S.*), for petitioner.

*Reed, McClure, Moceri & Thonn, P.S.*, by *William Robert Hickman* and *Paul S. Milich,* for respondent.

*Malcolm L. Edwards* and *John W. Hathaway,* amici curiae for respondent.

WILLIAMS, J.—The sole issue in this case is whether an equipment manufacturer is entitled to contribution from an employer when a workman sues the manufacturer for injuries suffered on the job as a result of the alleged concurrent negligence of the manufacturer and the employer. The trial court ruled that an action for contribution under RCW 4.22.040 could be maintained against the employer. We reverse.

The facts in this case are not disputed upon appeal. The plaintiff, James Glass, alleged in his complaint that he was severely injured on October 3, 1979, when an aluminum die cast molding machine closed on his right hand. The machine was manufactured by the respondent, Stahl Specialty Company (Stahl). At the time of his injury, Glass was operating the machine in the course and scope of his employment with petitioner, Morel Foundry Corporation (Morel). On August 14, 1980, Glass brought suit against Stahl to recover for his injuries. His products liability action alleged negligence and strict liability as the theories of recovery. Stahl initially answered by denying plaintiff's allegations and affirmatively alleging contributory negligence on plaintiff's part.

The 1981 Legislature enacted the tort and products liability reform act, Laws of 1981, ch. 27, p. 112 (tort reform act). Section 12 of the act, now codified as RCW 4.22.040,

provides for a right of contribution among persons jointly and severally liable for the same harm. This right of contribution applies to all actions not tried before July 26, 1981. RCW 4.22.920(2). Since this action was commenced on August 14, 1980, but has yet to be tried, the contribution statute is applicable.

On June 11, 1981, Stahl secured an order granting it leave to file an amended answer adding Morel, Glass' employer, as a third party defendant. The third party complaint alleged Morel's negligence was the proximate cause of Glass' injuries and that Stahl was entitled to contribution from Morel. Morel moved for summary judgment pursuant to CR 56 or, alternatively, for dismissal of the third party complaint under CR 12(b)(6) and CR 12(c). In support of its motion, one of Morel's attorneys filed an affidavit indicating that James Glass was an employee of Morel, that he was injured in the course of his employment on Morel's premises, and that Glass had received industrial insurance benefits as a result of the accident. The trial court entered an order denying Morel's motion based on its interpretation of the tort reform act's new contribution provision. The trial court's order, however, recited that Morel "would sustain a hardship in having to participate in the litigation of this case, pending a resolution of the novel legal question [involved]; . . ." The order therefore stated that it was a final judgment pursuant to CR 54(b). Clerk's Papers, at 3–4. Morel appeals from the order directly to this court. James Glass is not a party to this appeal.

An initial procedural issue, not raised by either party, is whether the trial court's order is an appealable decision. The order purports to be a final judgment pursuant to CR 54(b), which states, in part:

> When more than one claim for relief is presented in an action, . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination in the judgment, that there is no just reason for delay and upon an express

direction for the entry of judgment.

*See also* RAP 2.2(d). For an order to be appealable under CR 54(b), the order must be final with respect to at least one claim or party. *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 434–35, 100 L. Ed. 1297, 76 S. Ct. 895 (1956) (construing Fed. R. Civ. P. 54(b)); *Doerflinger v. New York Life Ins. Co.,* 88 Wn.2d 878, 881, 567 P.2d 230 (1977); *Schiffman v. Hanson Excavating Co.,* 82 Wn.2d 681, 684–89, 513 P.2d 29 (1973). *See generally* 10 C. Wright & A. Miller, *Federal Practice* §§ 2653–61 (1973 & Supp. 1981). The trial court's order in the present case *denied* summary judgment, retained Morel as a party to the action, and left the issues to be resolved at trial. Thus, despite the trial court's designation of the order as final and appealable and its recitation that a substantial hardship would result in Morel's having to participate in the litigation, it is not a final and appealable decision with respect to any claim or party. Nevertheless, since we have determined the trial court committed obvious or probable error, we treat this case as one for discretionary review. *See* RAP 2.3(b) and 5.1(c).

Prior to the enactment of the tort reform act, Washington law did not permit contribution claims among joint tortfeasors. *Wenatchee Wenoka Growers Ass'n v. Krack Corp.,* 89 Wn.2d 847, 852–54, 576 P.2d 388 (1978). RCW 4.22.040 changed the law in Washington to permit claims for contribution between persons who are jointly and severally liable for the same injury.[1]

Except for actions by an employee against an employer for intentionally inflicted injuries, RCW 51.24.020, the Washington Industrial Insurance Act, RCW Title 51, is the sole and exclusive remedy for an employee against an employer for injuries sustained in the course of employ-

---

[1]RCW 4.22.040(1) provides in pertinent part:

"(1) A right of contribution exists between or among two or more persons *who are jointly and severally liable* upon the same indivisible claim for the same injury, death or harm, . . . The basis for contribution *among liable persons* is the comparative fault of each such person." (Italics ours.)

ment. RCW 51.04.010; RCW 51.32.010; *Thompson v. Lewis Cy.,* 92 Wn.2d 204, 208, 595 P.2d 541 (1979); *Stertz v. Industrial Ins. Comm'n,* 91 Wash. 588, 158 P. 256 (1916). In *Stertz,* we explained the quid pro quo rationale of the compensation system as the exclusive remedy for on–the-job injuries:

> Our act came of a great compromise between employers and employed. Both had suffered under the old system, the employers by heavy judgments of which half was opposing lawyers' booty, the workmen through the old defenses or exhaustion in wasteful litigation. Both wanted peace. The master in exchange for limited liability was willing to pay on some claims in future where in the past there had been no liability at all. The servant was willing not only to give up trial by jury but to accept far less than he had often won in court, provided he was sure to get the small sum without having to fight for it. All agreed that the blood of the workman was a cost of production, that the industry should bear the charge.

*Stertz,* at 590–91. Although industrial insurance is the exclusive remedy against employers, an injured worker can elect to bring an action at law to recover damages from a negligent third party, who is not a coworker, and who is at least partially at fault in causing the injuries. RCW 51.24-.030. The election to sue a third party is not a bar to recovery of full compensation benefits, RCW 51.24.040, but the Department of Labor and Industries or a self–insured employer has an automatic lien against any recoveries against a third party to the extent of benefits paid. RCW 51.24.060.

In *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 588 P.2d 1308 (1978), we considered the effect of the Industrial Insurance Act, RCW 51.04 *et seq.,* on a contribution claim against an employer. In that case, a construction worker had been electrocuted when the boom of the truck upon which he was working came into contact with a power line. The personal representative of the worker's estate sued the owner of the truck and the manufacturer of the boom. These defendants brought a third party

action for indemnity or contribution against the deceased worker's employer. The employer unsuccessfully moved for dismissal of the third party complaint. The trial court ordered, however, that the plaintiff could recover from each defendant only in proportion to that defendant's fault. Furthermore, any judgment against the employer would be satisfied by proof of the employer's payment of its industrial insurance premiums. Thus, the only effect of the employer's presence in the suit was to reduce the plaintiff's recovery from the other two defendants. We reversed the trial court on the basis that since RCW 51.04.010 abolished judicial jurisdiction over civil actions for personal injuries between employers and employees, the impleading of employers could not be used as a device to permit the court to assume jurisdiction over this "immunized" area of tort law.

> In effect, *the Act "immunizes", from judicial jurisdiction, all tort actions which are premised upon the "fault" of the employer vis-a-vis the employee.* The determination to abolish judicial jurisdiction over such "immunized" conduct was a legislative policy decision. The wisdom of that decision is not a proper subject of our review.

(Italics ours.) *Shoreline Concrete Co.,* at 242. *Accord, Davis v. Niagara Mach. Co.,* 90 Wn.2d 342, 581 P.2d 1344 (1978); *Kelley v. Howard S. Wright Constr. Co.,* 90 Wn.2d 323, 582 P.2d 500 (1978).

This court has recognized, however, that a third party claim against the employer can be maintained if the employer "voluntarily assumes an independent duty or obligation to the third party." *Shoreline Concrete Co.,* at 242. *See also Redford v. Seattle,* 94 Wn.2d 198, 615 P.2d 1285 (1980). Generally, Washington courts have required that a written indemnification agreement between the employer and the tortfeasor exist before such an independent duty or obligation could be found. *See, e.g., Redford v. Seattle, supra; Carl T. Madsen, Inc. v. Babler Bros.,* 25 Wn. App. 880, 610 P.2d 958 (1980); *Olch v. Pacific Press & Shear Co.,* 19 Wn. App. 89, 573 P.2d 1355, *review denied,*

90 Wn.2d 1017 (1978). Such agreements purporting to deprive an employer of the immunity provided by the Industrial Insurance Act are disfavored under Washington law, and any intent to provide for indemnification must be clearly expressed in the agreement. *Calkins v. Lorain Div. of Koehring Co.*, 26 Wn. App. 206, 209, 613 P.2d 143 (1980). *See generally* Comment, *Workers' Compensation—Third-Party Tort Liability to Injured Workers Under R.C.W. Title 51—Seattle–First National Bank v. Shoreline Concrete Co., 91 Wn.2d 230, 588 P.2d 1308 (1978),* 55 Wash. L. Rev. 243 (1979).

Respondent Stahl contends all the above case law was made obsolete by the Legislature's passage of the tort reform act, in general, and RCW 4.22.040, in particular. Since the statute does not provide for any exceptions to the contribution provision, Stahl argues no exceptions were intended and none can be created by the court. *See Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 587 P.2d 535 (1978). We disagree.

The flaw in this argument is Stahl's assumption that an employer can be "liable" to an injured employee. This is not so.

> [O]urs is not an employer's liability act. . . . It is an industrial insurance statute. . . . [T]he employee is no longer to look to the master even for the scheduled and mandatory compensation. He must look only to a fund fed by various employers. *When the employer, for his part, pays his share into this fund, all obligation on his part to anybody is ended.*

(Italics ours.) *Stertz v. Industrial Ins. Comm'n, supra* at 594–95. More recently, it has been said the Industrial Insurance Act *immunizes* the employer from liability. *Seattle–First Nat'l Bank v. Shoreline Concrete Co., supra* at 242–43; *Kelley v. Howard S. Wright Constr. Co., supra* at 327.

RCW 4.22.040(1) creates a right of contribution only where "two or more persons . . . are jointly and severally liable . . . for the same injury . . ." Where there is no lia-

bility, there can be no joint and several liability. Where there is no joint and several liability, there is no right of contribution. Since an employer cannot be liable for employees injured on the job due to the employer's own negligence absent an express indemnification agreement to assume such liability to third parties, *Seattle–First Nat'l Bank v. Shoreline Concrete Co., supra,* there can be no contribution in this case.

In the great majority of states that have enacted statutes creating a right of contribution among joint tortfeasors, the courts have interpreted the statutes as encompassing no right to contribution from employers. Annot., *Effect of Workmen's Compensation Act on Right of Third–Person Tortfeasor To Recover Contribution From Employer of Injured or Killed Workman,* 53 A.L.R.2d 977, § 4 (1957). While some courts have extended the right of contribution to permit actions against employers, *see Skinner v. Reed–Prentice Div. Package Mach. Co.,* 70 Ill. 2d 1, 374 N.E.2d 437 (1978); *Dole v. Dow Chem. Co.,* 30 N.Y.2d 143, 282 N.E.2d 288, 331 N.Y.S.2d 382 (1972); *Maio v. Fahs,* 339 Pa. 180, 14 A.2d 105 (1940), most courts have reasoned that since an employer cannot be jointly and severally liable for injuries to employees, no right of contribution arises. *See United Gas Pipeline Co. v. Gulf Power Co.,* 334 So. 2d 310 (Fla. Dist. Ct. App.), *cert. denied,* 341 So. 2d 1086 (Fla. 1976); *Cacchillo v. H. Leach Mach. Co.,* 111 R.I. 593, 305 A.2d 541 (1973); *Lovette v. Lloyd,* 236 N.C. 663, 73 S.E.2d 886 (1953). Our present holding aligns us with the majority of states.

█ Stahl's argument that the Legislature intended to alter existing case law which prevents third parties from obtaining contribution from an employer is contradicted by sound principles of statutory construction and by the legislative history of the tort reform act. In construing legislation, we presume the Legislature is familiar with past judicial interpretations of its enactments. *Bixler v. Bowman,* 94 Wn.2d 146, 149, 614 P.2d 1290 (1980). In the absence of an indication from the Legislature that it

intended to overrule the common law, new legislation will be presumed to be in line with prior judicial decisions in a field of law. *Neil F. Lampson Equip. Rental & Sales, Inc. v. West Pasco Water Sys., Inc.*, 68 Wn.2d 172, 175–76, 412 P.2d 106 (1966). No such expression of intent to change the case law is contained in the statutory language of RCW 4.22.040–.050. Further, legislative history of the recommendations of the Senate Select Committee on Tort and Product Liability Reform suggests exactly the opposite intent:

> The Select Committee concluded that changes to the worker compensation third party action statute should only be made after a careful analysis of the impact of such changes on the entire worker compensation system. It felt that this analysis could better be performed by the Joint Committee on Workers' Compensation, and the Select Committee recommends that the Joint Committee make such an analysis.

Senate Journal, 47th Legislature (1981), at 629. Given the comprehensive nature of the Industrial Insurance Act, and its unique place in our law, we must assume the Legislature would specifically address the question of contribution in third party actions if a change was intended. It did not do so. Apparently, any changes in the existing law with respect to an employer's duty of contribution will come, if at all, in future enactments. *See generally* Talmadge, *Washington's Product Liability Act*, 5 U. Puget Sound L. Rev. 1 (1981).

We have previously indicated the question of whether a third party should be entitled to contribution from employers is a matter strictly for the Legislature. *Seattle-First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 242, 588 P.2d 1308 (1978). That body is far better equipped to evaluate the public policy implications of such a rule than are we. Thus, even though requiring one wrongdoer to shoulder all the damages when the other wrongdoer is an employer may be unfair, this situation was not alleviated by the new contribution statute, RCW 4.22.040.

We reverse the trial court's denial of Morel's motion for

summary judgment and dismissal of the third party complaint. This cause is remanded to the trial court with instructions to dismiss Stahl's third party complaint against Morel.

Reversed and remanded with instructions.

BRACHTENBACH, C.J., and STAFFORD, UTTER, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.

ROSELLINI, J. (concurring)—To understand the problems raised by the issues in this case, we must examine *Davis v. Niagara Mach. Co.*, 90 Wn.2d 342, 581 P.2d 1344 (1978).

In 1924, Niagara Machine manufactured a punch press which was sold in 1925. The machine was capable of performing numerous operations and no all–inclusive guard could properly protect the operator from all the possible dangers associated with its use. The machine was sold without a guard with the expectation that it would be equipped by the purchaser to safely perform the particular task required of it.

The employer purchased the punch press second– or third–hand in 1950. In 1971, Martin, an employee, was injured when he tripped the foot pedal which activates the machine, while his hands were in the cutting die area. An action brought by Martin against Niagara was settled.

Following that settlement, Niagara sent a letter to the employer informing it of the Martin lawsuit. The letter advised that certain operations should not be performed on the machine unless a point of operation guard was in place, and requested that enclosed warning tags be placed on the press. The tags read:

WARNING

To prevent serious bodily injury

Never place any part of your body under the slide (ram) or within the die area unless power is off, flywheel is stopped and the slide (ram) is blocked up.

Never operate, install dies or maintain this machine without proper instruction and without first reading and understanding the operator's or machine manual.

It is the employer's responsibility to implement the above and also to provide proper dies, guards, devices or means that may be necessary or required for any particular use, operation, set–up or service.

*Niagara,* at 344.

The employer did not install a point of operation guard, but did attach one of the tags to the press on which Martin had been injured. The employer also requested additional tags, which Niagara supplied.

In 1975, Davis, another employee, injured the fingers of his left hand on the same press and in much the same way as had Martin. Davis applied for and received workers' compensation under the Industrial Insurance Act. He then brought an action against Niagara asserting that the press was unsafe and designed in a dangerously defective manner.

The court refused to allow the punch press manufacturer who had been sued by the worker to sue the worker's employer for contributions. The court said that before that could occur, the Legislature would have to act.

In 1981, the Legislature enacted the tort products liability reform act, Laws of 1981, ch. 27. The Preamble to the act states:

> Tort reform in this state has for the most part been accomplished in the courts on a case–by–case basis. While this process has resulted in significant progress and the harshness of many common law doctrines has to some extent been ameliorated by decisional law, the legislature has from time to time felt it necessary to intervene to bring about needed reforms such as those contained in the 1973 comparative negligence act.
>
> The purpose of this amendatory act is to enact further reforms in the tort law to create a fairer and more equitable distribution of liability among parties at fault.
>
> Of particular concern is the area of tort law known as product liability law. Sharply rising premiums for product liability insurance have increased the cost of consumer and industrial goods. These increases in premiums have resulted in disincentives to industrial innovation and the development of new products. High

product liability premiums may encourage product sellers and manufacturers to go without liability insurance or pass the high cost of insurance on to the consuming public in general.

It is the intent of the legislature to treat the consuming public, the product seller, the product manufacturer, and the product liability insurer in a balanced fashion in order to deal with these problems.

It is the intent of the legislature that the right of the consumer to recover for injuries sustained as a result of an unsafe product not be unduly impaired. It is further the intent of the legislature that retail businesses located primarily in the state of Washington be protected from the substantially increasing product liability insurance costs and unwarranted exposure to product liability litigation.

Section 12(1) provides, in pertinent part:

A right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death or harm, whether or not judgment has been recovered against all or any of them. . . . The basis for contribution among liable persons is the comparative fault of each such person.

Under the *Niagara* case, there was no incentive or motivation for the employer to protect the worker by placing guards on the machine. Any injury that the worker suffered would be paid by the manufacturer of the machine, assuming he was sued by the employee. The employer's time loss experience would not be increased, as the Industrial Insurance Act provides that if any compensation is received by an employee from a third party, there must be reimbursement to the Department of Labor and Industries. The employer, under these circumstances, is not deterred from using unsafe machines, as he could expect injuries to be compensated by the machine's manufacturer.

I am here concerned with the safety of workers and to prevent workers being subject to any risk of injury. While some courts have extended the right of contribution to permit actions against employers (*see Skinner v. Reed–Pren-*

*tice Div. Package Mach. Co.,* 70 Ill. 2d 1, 374 N.E.2d 437 (1978); *Dole v. Dow Chem. Co.,* 30 N.Y.2d 143, 282 N.E.2d 288, 331 N.Y.S.2d 382 (1972); *Maio v. Fahs,* 339 Pa. 180, 14 A.2d 105 (1940)), this court has interpreted the statute as encompassing no right to contribution from an employer.

Under the *Niagara* case the manufacturer would be liable indefinitely. There is no statute of limitations, and the manufacturer can only escape liability by going bankrupt.

Section 7 of the 1981 act provides that a manufacturer would not be liable after the product's "useful safe life" had expired. Section 7(2) states that "[i]f the harm was caused more than twelve years after the time of delivery, a presumption arises that the harm was caused after the useful safe life had expired." This gives a manufacturer some protection.

It appears to me that, in reading the Preamble to the tort liability act with the above section and section 12(1), it can be interpreted that the Legislature was intending to ameliorate the evils of the *Niagara* case.

This being a case of first impression and not knowing exactly what the consequences would be if the court changed its rule in regard to an action for contributions against the employer, I will reluctantly adhere to the rule of the majority. However, I am not willing to adhere to our past rulings under the circumstances of *Niagara,* where employers are warned of unsafe machines and continue to use them, or where the Department of Labor and Industries fails to "red tag" the machine so it cannot be used unless safeguards are installed. I am unwilling to adhere to a rule of law which may result in an unsafe workplace or cause injury to a worker.

Reconsideration denied February 10, 1983.