# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of M.C.L., DOB: 10/18/2006 | DIVISION ONE |
| M.C.L., Appellant, | No. 79396-9-I |
| v. | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF CHILDREN, YOUTH AND FAMILIES, Respondent. | FILED: December 16, 2019 |

DWYER, J. — The Department of Social and Health Services (DSHS) filed a dependency petition concerning M.C.L. in early 2018 and subsequently allowed him to be placed with his mother.[1] After continuing the dependency fact-finding hearing several times, the State moved to dismiss its petition, as the conditions that prompted the petition's filing no longer existed. M.C.L.'s objections to dismissal were unavailing, and a court commissioner ruled that the State had an absolute right to dismissal. On a motion for revision, the superior court adopted the decision of the commissioner.

---

[1] The Department of Social and Health Services' role in this case was assumed by the new Department of Children, Youth, and Families after July 1, 2018. LAWS OF 2017, 3d Spec. Sess., ch. 6, § 101.

M.C.L. filed a notice of appeal. We hold that the ruling from which the appeal is sought is not an appealable ruling. We also do not believe that discretionary review is warranted. Thus, we dismiss the appeal.

I

M.C.L. is the son of father J.L. and mother J.P. At the time of the dependency petition's filing, M.C.L. lived with his father. However, a referrer reported in late 2017 that the father was consistently using heroin and methamphetamines, often in the presence of M.C.L., failing to provide M.C.L. with basic needs such as food or clothing, neglecting to arrange for his transportation to or from school, and often had M.C.L. stay at the homes of other addicts. Teachers and staff at M.C.L.'s school, and staff at a local family shelter, corroborated these observations, leading a DSHS employee to file a dependency petition on January 11, 2018.

That day, the juvenile court ordered that M.C.L. be placed in the care of a relative in Ocean Shores. One week later, the court entered a new order placing M.C.L. in the care of his mother, pursuant to which the mother was required to engage in parenting instruction, complete a parenting plan, and submit to drug testing. The court scheduled a dependency fact-finding hearing for March 2018.

In the meantime, DSHS assigned a social worker to M.C.L.'s case. In February, this social worker conducted a health and safety visit at the mother's home in the presence of the mother and child. During this visit, and later, M.C.L. expressed his desire to return to living with his father. While the social worker took note of this desire as evidence of the child's maturity in understanding his

2

father's issues, she also noted that M.C.L. entered shelter care an entire grade behind his peers and exhibited aggressive behavior in the classroom.

Before the scheduled fact-finding hearing, the father's attorney asked that an attorney be appointed to represent M.C.L.'s interests. M.C.L.'s guardian ad litem joined in this motion. The trial court granted the motion. Ultimately, the dependency fact-finding hearing was continued several times. M.C.L. remained in his mother's care.

At a status conference on August 28, 2018, the State's attorney announced that the Department of Children, Youth, and Families (DCYF) intended to withdraw its petition and move to dismiss the dependency. The father's attorney objected. The court ruled that dismissal was precluded, on the basis that the parties were not given adequate notice of the request.[2] Following this, the fact-finding hearing was continued until October. A hearing on DCYF's motion to dismiss was scheduled for September 25.

At the hearing, the mother argued in support of DCYF's motion, providing evidence of her progress in substance use treatment and of her gainful employment, as well as M.C.L.'s academic progress while in her care. M.C.L., opposing the motion, submitted evidence of past violent behavior and felony convictions on the part of his mother's live-in boyfriend, Olin Edwards, as well as Edwards's disrespect toward M.C.L. and his attorney. The commissioner was concerned by Edwards's behavior in spite of DCYF's assertions that its safety

---

[2] The relevant local rule requires that motions "be filed and served upon all parties at least nine (9) court days before hearing." SCLCR 6(d)(2)(i).

assessment identified no present risks to M.C.L. The commissioner nevertheless granted DCYF's motion on the basis that its right to dismiss was absolute.

> I don't think that I have the ability to keep the department from dismissing [the dependency]. I think that they have an absolute right to dismiss. However, I want findings of fact that I do not find it in the best interests of the child to dismiss this matter, and I feel that there are safety risks to this child, and if the department continues to want to dismiss the matter, they may do so.
>
> . . . .
>
> [M.C.L.] can file a private action or a CHINS,[3] or there's a variety of other actions.

The written findings stated, accordingly:

> The court reviewed the motion, declarations, if any, and relevant court records and finds that dismissal is granted but not in the child's best interest and there are safety risks. However the Department has conducted a safety assessment. The court finds that the Department has a right to dismiss.

The superior court adopted the commissioner's decision on M.C.L.'s motion for revision. M.C.L. appeals.

II

M.C.L. first asserts a right to direct appeal of the superior court's decision.[4] Because the challenged order does not fall within the ambit of RAP 2.2(a), governing when a case is appealable as a matter of right, M.C.L. may not appeal.

When DCYF (formerly DSHS) files a dependency petition, the trial court sets a fact-finding hearing within 75 days to allow DCYF and the parent, or parents, to gather and present evidence as to whether the child is dependent.

---

[3] Child In Need of Support.

[4] "We review the superior court's ruling, not the commissioner's." State v. Ramer, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). "Once the superior court makes a decision on revision, 'the appeal is from the superior court's decision, not the commissioner's.'" Ramer, 151 Wn.2d at 113 (quoting State v. Hoffman, 115 Wn. App. 91, 101, 60 P.3d 1261 (2003)).

RCW 13.34.070(1). Children are entitled to a speedy resolution of dependency and termination proceedings. See RCW 13.34.020 ("The right of a child to basic nurturing includes the right to a safe, stable, and permanent home and a speedy resolution of any proceeding under this chapter."); see also RAP 18.13A(a) (appeals of dependency "shall be heard as expeditiously as possible").

RAP 2.2(a) provides a complete list of superior court decisions that are appealable as a matter of right. The only mention of dependency proceedings is in RAP 2.2(a)(5), which states that a party may appeal from

> [t]he disposition decision following a finding of dependency by a juvenile court, or a disposition decision following a finding of guilt in a juvenile offense proceeding.

This rule does not provide that the absence of a finding of dependency by a juvenile court is appealable as a matter of right. Further, it does not provide a right to appeal from an order granting a voluntary motion to dismiss a dependency petition without prejudice. As we stated in a related context, "the State is not entitled to appeal from the dismissal of a petition for dependency or permanent deprivation. The failure to include such dismissals in RAP 2.2(a)(5) . . . indicates the intent that such appeals not be permitted." In re Welfare of Watson, 23 Wn. App. 21, 23, 594 P.2d 947 (1979). M.C.L. does not establish a right to appeal from the grant of the motion for voluntary dismissal.

Only in his reply brief does M.C.L., in fact, address the dispositive question of whether he is entitled to appeal from the order granting voluntary dismissal. He asserts that a right to appeal exists under RAP 2.2(a)(3), which allows an appeal from any "written decision affecting a substantial right in a civil

case that in effect determines the action and prevents a final judgment or discontinues the action." However, in In re Dependency of A.G., 127 Wn. App. 801, 807-08, 112 P.3d 588 (2005), we held that dismissal of a parental termination petition without prejudice did not fall within the ambit of the RAP 2.2(a)(3) requirements for appealability when it did not bar a subsequent petition. Similarly, the order in this case does not determine the case or prevent a final judgment, as the dismissal was granted without prejudice—M.C.L. or his father are both free to commence a new dependency action should either of them so desire.

The order granting DCYF's motion for voluntary dismissal without prejudice is not an appealable order.

## III

In the alternative, M.C.L. seeks discretionary review of the trial court's order. However, discretionary review is not warranted.

## A

RAP 2.3(a) states that "[u]nless otherwise prohibited by statute or court rule, a party may seek discretionary review of any act of the superior court not appealable as a matter of right." RAP 2.3(b) enumerates those superior court actions from which discretionary review may be granted, with RAP 2.3(b)(1) providing that discretionary review may be accepted if "[t]he superior court has committed an obvious error which would render further proceedings useless."

RAP 2.3(b)(1) has been interpreted to allow discretionary review from the denial of a summary judgment motion "to avoid a useless trial." Douchette v.

Bethel Sch. Dist. No. 403, 117 Wn.2d 805, 808, 818 P.2d 1362 (1991) (citing Hartley v. State, 103 Wn.2d 768, 774, 698 P.2d 77 (1985)). It has also been applied to reverse the denial of a plaintiff's CR 41(a) motion for voluntary dismissal. King County Council v. King County Pers. Bd., 43 Wn. App. 317, 318, 716 P.2d 322 (1986). This, of course, is the type of motion that was granted in this case.

The standard of RAP 2.3(b)(1) is not met here. To the contrary, the rule's obvious error standard would be more likely met had the superior court *refused* to grant DCYF's request for voluntary dismissal—such an order would be contrary to the decision in King County Pers. Bd., 43 Wn. App. at 318, and would cause exactly the sort of "useless trial" that the rule exists to prevent. Thus, M.C.L. is not entitled to discretionary review pursuant to RAP 2.3(b)(1).

B

RAP 2.3(b)(2) sets out a two-part test to determine whether discretionary review should be granted. First, the superior court must have committed "probable" error; second, the court's decision must alter the status quo or substantially limit a party's freedom to act. RAP 2.3(b)(2). As the language suggests, "probable error" is a lesser standard than "obvious error."[5] However, the decision of the trial court herein evinces nothing that would satisfy either requirement of RAP 2.3(b)(2).

---

[5] Many Washington cases have conflated the two standards. See, e.g., Glass v. Stahl Specialty Co., 97 Wn.2d 880, 883, 652 P.2d 948 (1982) ("[W]e have determined the trial court committed obvious or probable error."); Walden v. City of Seattle, 77 Wn. App. 784, 790, 892 P.2d 745 (1995) ("[W]e will grant discretionary review under RAP 2.3(b)(1) or (2) if obvious or probable error is shown *regardless* of whether the error renders 'further proceedings useless' or 'substantially alters the status quo or substantially limits the freedom of a party to act.'"). To conflate the standards, however, is to err.

7

M.C.L. avers that probable error exists because, in his view, the superior court's application of CR 41 was inconsistent with the Juvenile Court Rules and the Juvenile Court Act in Cases Relating to Dependency of a Child and the Termination of a Parent and Child Relationship, chapter 13.34 RCW. This is so, he asserts, because JuCR 1.4(a) precludes application of civil rules inconsistent with the Juvenile Court Act, which, per his reading, unconditionally requires a fact-finding hearing once a dependency petition is filed. M.C.L. is wrong.

CR 41(a)(1) requires a dismissal when the plaintiff or petitioner requests it prior to resting its case, absent a previously filed counterclaim. As we have stated, in such a circumstance the court is obligated to dismiss.

> CR 41 is specific that an action will be dismissed upon motion of the plaintiff unless a counterclaim has been pleaded by the defendant prior to service upon him of the motion to dismiss. The plaintiff's right in this respect is absolute and involves no element of discretion on the part of the trial court.

Goin v. Goin, 8 Wn. App. 801, 802, 508 P.2d 1405 (1973).

JuCR 1.4(a) provides that "[t]he Superior Court Civil Rules shall apply in proceedings other than those involving a juvenile offense when not inconsistent with [juvenile court] rules and applicable statutes." Thus, in In re Dependency of L.S., 62 Wn. App. 1, 8, 813 P.2d 133 (1991), we approved of the use of a CR 56 summary judgment hearing in lieu of a fact-finding hearing. Similarly, in both In re Dependency of A.W., 53 Wn. App. 22, 26, 765 P.2d 307 (1988), and State v. Norlund, 31 Wn. App. 725, 726, 644 P.2d 724 (1982), we held that the waiver provisions in CR 12(h)(1), whereby certain defenses are forfeited if not promptly pleaded, applies in dependency proceedings. In A.W., we noted that

it is particularly appropriate to strictly apply the waiver provisions of CR 12(h)(1) in dependency and termination proceedings. Parties, attorneys, and the court have an obligation to expedite resolution of child custody and parental rights issues, and to thereby limit the period during which children face an uncertain future.

53 Wn. App. at 26.

This case authority supports the notion that CR 41 properly applies in dependency proceedings.

The legislative intent in dependency actions is

that the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized. When the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, the rights and safety of the child should prevail. In making reasonable efforts under this chapter, the child's health and safety shall be the paramount concern.

RCW 13.34.020.

M.C.L. argues that it would be inconsistent with chapter 13.34 RCW for DCYF to have an absolute right to dismiss its petition when it is against his best interests and safety concerns are claimed to exist.

Here, the dependency petition was filed by a DSHS social worker on January 11, 2018. The case was dismissed prior to fact-finding on September 25, 2018. RCW 13.34.110(1) states that "[t]he court shall hold a fact-finding hearing on the petition" and that the petitioner bears the burden of proof of dependency. M.C.L. asserts that the use of "shall" implies that there *must* be a fact-finding hearing whenever a petition is filed. However, nothing in chapter 13.34 RCW bars a voluntary dismissal of a petition prior to a fact-finding hearing.

Indeed, the chapter is silent as to whether, or how, a dismissal may take place at this stage of the proceedings.

In L.S., we ruled that a hearing on a CR 56 summary judgment motion could replace the fact-finding hearing. 62 Wn. App. at 8. This result obtained despite statutory language and procedures in the Juvenile Court Rules that "[t]he court shall hold a fact-finding hearing on the petition." RCW 13.34.110(1); JuCR 3.7(a). Similarly, a petitioner should retain the right to dismiss its petition prior to the fact-finding hearing when the petitioner believes that it cannot meet its burden of proof as is mandated in RCW 13.34.110(1). Requiring a petition to be prosecuted, regardless of changed circumstances and when the petitioner no longer believes that it can meet its burden of proof, would be an unwarranted invasion of the parent's rights and would place the petitioner's counsel in an ethical quandary.

Moreover, a finding of dependency requires more than proof of a child's best interests. For a petitioner to prevail at the fact-finding hearing, it must establish the existence of parental deficiencies by a preponderance of the evidence. RCW 13.34.130. Here, the petitioner did not believe that it could prove its case. In such an instance, it is entitled to withdraw its allegations. CR 41(a). Indeed, the applicable rule gives the petitioner the absolute right to do so.[6]

---

[6] M.C.L. cites to In re Dependency of R.H., 129 Wn. App. 83, 117 P.3d 1179 (2005), to support his assertion that a fact-finding hearing was mandatory. Therein, the dependency court granted a father's motion to dismiss a petition at the shelter care hearing; we held the dismissal was improper because (1) shelter care hearings do not provide adequate notice and opportunity for the parties to be heard on dependency-related issues and (2) the child had a fundamental right to health and safety that the court could not "ensure without orderly inquiries." R.H., 129 Wn. App. at 87-89. We also, however, recognized that a fact-finding hearing would not be

10

The probable error requirement of RAP 2.3(b) is not met. Nor is RAP 2.3(b)'s second requirement, that the trial court's decision alter the status quo or a party's freedom to act, met. "Any person may file a petition alleging dependency." JuCR 3.2(a). M.C.L. or his father can file a separate dependency petition. Their freedom to act in this way is unrestricted by the order of dismissal without prejudice. There is no basis for discretionary review.

The appeal is dismissed.

WE CONCUR:

---

required if "the petition is withdrawn or dismissed," and that a dependency petition may be dismissed prior to such a hearing. R.H., 129 Wn. App. at 87-88. Thus, M.C.L.'s reliance on the case is misplaced.